UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

THE GOLUB CORPORATION,

                            Plaintiff,

    -against-                                    1:15-CV-0848 (LEK/CFH)

SANDELL TRANSPORT, INC.,
d/b/a Sandell Logistics,

                            Defendant.

**MEMORANDUM-DECISION AND ORDER**

**I.    INTRODUCTION**

Plaintiff The Golub Corporation commenced this action against Defendant Sandell Transport, Inc., complaining of Sandell's role in the loss of a shipment of pistachios. Dkt. No. 1 ("Complaint") ¶¶ 1, 8–25. After answering Golub's Complaint, Dkt. No. 5 ("Answer"), Sandell impleaded the Wonderful Growers Cooperative and Wonderful Pistachios & Almonds, LLC (collectively, "Wonderful"), the sellers of the pistachios, as third-party defendants, Dkt. No. 8 ("Amended Third Party Complaint"); see also Dkt. No. 6 ("Original Third Party Complaint"). Currently before the Court is Wonderful's Motion to Dismiss. Dkt. No. 20 ("Motion"); see also Dkt. Nos. 23 ("Opposition"), 24 ("Plaintiff's Memorandum"), 27 ("Reply"). For the following reasons, Wonderful's Motion is granted, except that Sandell may file a motion to further amend its complaint.

## II. BACKGROUND

### A. The Con

Golub is an owner and operator of grocery stores and is headquartered in Schenectady, New York. Compl. ¶¶ 4–5. In need of goods to sell, on September 15, 2014, Golub placed an order with Wonderful—or more specifically, Wonderful's predecessors, Paramount Growers Cooperative, Inc. and Paramount Farms International LLC—seeking to buy a truckload of pistachios. Id. ¶ 8. Wonderful, however, is located in California, so Golub needed an intermediary to safely get the nuts from the West Coast to the East. Id. ¶ 8–9. A nonparty, Pellegrino Sales and Marketing, brokered a deal in which Sandell, a transportation and logistics company, would ship the pistachios from California to New York. Id. ¶¶ 1–2, 9–10; Am. TPC ¶¶ 6–8.

Instead of carrying the nuts itself, Sandell posted on industry job boards, "which are accessed by only registered motor carriers," seeking another trucking company that could handle the shipment. Am. TPC ¶ 9. A company called GM EXPRESS responded to Sandell's post, and its insurance and safety information checked out. Id. ¶ 10. Sandell then commissioned GM EXPRESS to handle the delivery. Id. ¶ 11.

But appearances can be deceiving, and it turns out that "GM EXPRESS" was not actually GM EXPRESS. Unknown to Sandell, the identity of GM EXPRESS had been stolen by criminals who were set on pilfering Golub's pistachio shipment. Id. ¶¶ 13–14. In this shell game of trucking companies, the pistachio thieves provided Sandell with stolen yet still valid bona fides, including insurance information, tractor and trailer license plate numbers, and a driver's license number (which Sandell claims was valid despite its conspicuously sequential numbering of

2

B7890123). Id. ¶ 13. Through this scheme, Sandell and Wonderful would become the thieves' unwitting insiders, happily loading the nuts directly onto the getaway vehicle.

**B. The Caper**

On September 18, 2014—the day the pistachios were to be picked up—Sandell contacted Wonderful and sent it information on the truck and driver who would be picking up the nuts. Compl. ¶¶ 16–17; Am. TPC ¶ 12. Specifically, Sandell gave Wonderful the tractor and trailer license plate numbers provided by GM EXPRESS, along with the driver's license number. Am. TPC ¶ 12.

Later that day, a truck from "GM EXPRESS" manned by a driver and a passenger arrived at Wonderful to pick up the pistachios. Id. ¶ 15. When the truck arrived, the passenger exited the vehicle and provided Wonderful with a driver's license. Id. ¶¶ 20–22; Dkt. No. 8-3 ("Exhibit A"). The name on this license was "Eduard Banjari," and the driver's license number matched the one provided by GM EXPRESS to Sandell and thus by Sandell to Wonderful. Ex. A. Of particular importance to Sandell now, the address on the license was "10150 Lasaine Ave., Northdrige, CA 91325." Id.; Am. TPC ¶ 21. But according to Sandell, "Northdrige"—presumably a misspelling of Northridge, a neighborhood in Los Angeles that is itself not a proper municipality—"is a fictitious location," which should have tipped Wonderful off as to the impending heist. Am. TPC ¶ 22.[1] Additionally, Wonderful "never spoke to the driver" of the

---

[1] In addition to its other motion papers, Wonderful also asked the Court to take judicial notice that "Northridge, California"—the neighborhood discussed above—is indeed a real place, presumably justifying its acceptance of the driver's license. Dkt. No. 22. Because, as discussed below, the question of Wonderful's liability based on the "Northdrige" issue is epistemic rather then existential, the Court does not need to consider this request.

3

truck, and instead relied on the two truck license plate numbers and the driver's license to verify that the pistachios were being loaded onto the correct vehicle. Id. ¶ 23.

Unaware that it was being swindled, Wonderful loaded the pistachios onto the GM EXPRESS truck and allowed them to leave. Id. ¶ 16. The pistachios were never delivered to Golub, and the driver and passenger have yet to be found. Id. ¶ 17.

### C. The Case

Less than one year after the pistachios were lost, Golub initiated its lawsuit against Sandell, seeking to recover the amount it paid Wonderful for the nuts. Compl.; Am. TPC ¶ 18. According to Golub, Sandell is liable for the loss as a motor carrier entrusted with the lost pistachios pursuant to the Carmack Amendment, 49 U.S.C. § 14706, and also due to breach of contract and Sandell's alleged negligence in appointing GM EXPRESS to handle the shipment. Compl. ¶¶ 6, 34–49.[2]

After answering, Sandell filed a third party complaint, claiming that the loss of the pistachios was in fact Wonderful's fault. Original TPC; Am. TPC. Sandell's primary claim is that Wonderful was negligent in releasing the pistachios to GM EXPRESS, both because the driver's license provided by the truck's passenger had an address from "Northdrige," a nonexistent place, and because representatives of Wonderful never spoke to the truck's driver (only to the passenger). Am. TPC ¶¶ 21–23. Additionally, Sandell appears to claim that Wonderful breached a contract with Golub, Sandell, or both "by allowing an unapproved vehicle . . . to pick up the

---

[2] Golub's Complaint erroneously cites to the section on liability of rail carriers instead of motor carriers. Compl. ¶¶ 6–7 (citing 49 U.S.C. § 11706).

shipment of pistachios," and that Wonderful "fraudulently prepared the Bill of Lading with information that [it] knew or should have known was invalid." Id. ¶¶ 26, 28–38.

Wonderful responded by moving to dismiss the Amended Third Party Complaint in its entirety, arguing that Sandell's pleading fails to establish any duty owed by Wonderful to Sandell, and that if even if there were a duty, Sandell failed to show that it was breached. Dkt. No. 20-1 ("Memorandum in Support") at 8–13. Wonderful also argues that Sandell's fraud claim must be dismissed, both for not alleging facts going to the elements of that claim and for failing to meet the heightened pleading requirements of Rule 9(b). Id. at 13–14.

### III. LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A court must accept as true the factual allegations contained in a complaint and draw all inferences in favor of the plaintiff. Allaire Corp. v. Okumus, 433 F.3d 248, 249–50 (2d Cir. 2006). Plausibility, however, requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]." Twombly, 550 U.S. at 556. The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. (quoting Twombly, 550 U.S. at 555). Where a court is unable to infer more than the mere possibility of the alleged misconduct based on the pleaded facts, the pleader

5

has not demonstrated that she is entitled to relief and the action is subject to dismissal. Id. at 678–79.

IV. **DISCUSSION**

   **A. Negligence**

In response to Sandell's negligence claim, Wonderful moves to dismiss on two grounds. First, Wonderful argues that Sandell's complaint fails to establish any duty owed by Wonderful to Sandell. Mem. Supp. at 8–12. Second, Wonderful says that even if there were such a duty, the Amended Third Party Complaint does not set out sufficient facts to demonstrate any breach. Id. at 12–13.

As a preliminary matter, Wonderful seems to misapply the element of duty within its motion papers, and commingle its arguments concerning duty and breach. See id. at 8–13. The duty in negligence refers to the obligation to act (or not to act) in a certain manner that is created by the relationship between or among the parties. This duty arises "whenever one person is by circumstances placed in such a position with regard to another that every one of ordinary sense who did think would at once recognize that if he [or she] did not use ordinary care and skill in his [or her] own conduct with regard to the circumstances he [or she] would cause danger of injury to the person or property of the other." Palka v. Servicemaster Mgmt. Servs. Corp., 634 N.E.2d 189, 192 (N.Y. 1994) (alterations in original) (quoting Havas v. Victory Paper Stock Co., 402 N.E.2d 1136, 1138 (N.Y. 1980)). "In [applying the element of duty], courts identify what people may reasonably expect of one another. In assessing the scope and consequences of civil responsibility, they define the boundaries of 'duty' to comport with what is socially, culturally

and economically acceptable." Darby v. Compagnie Nat'l Air Fr., 753 N.E.2d 160, 162 (N.Y. 2001).

This duty need not have been owed directly to Sandell, since a third-party claim for contribution may be predicated on the third-party defendant's responsibility for the original plaintiff's injuries. E.g., Isabella v. Koubek, 733 F.3d 384, 387 (2d Cir. 2013); see also Bank of India v. Trendi Sportswear, Inc., 239 F.3d 428, 438 (2d Cir. 2000) (describing the use of Rule 14 impleader as an effort to pass on liability from the original defendant to the third-party defendant); Doucette v. Vibe Records, Inc., 233 F.R.D. 117, 120 (E.D.N.Y. 2005) (same). Furthermore, the relationships that can give rise to a duty in tort often stem from the business dealings of the parties, and can even arise out of a contract. See Int'l Fid. Ins. Co. v. Gaco W., Inc., 645 N.Y.S.2d 522, 525 (App. Div. 1996) ("A person charged with performing work under a contract must exercise reasonable skill and care in performing the work and negligent performance of the work may give rise to actions in tort and for breach of contract."); Rosenbaum v. Branster Realty Corp., 93 N.Y.S.2d 209, 211 (App. Div. 1949) ("Where a person contracts to do certain work he is charged with the common law duty of exercising reasonable care and skill in the performance of the work required to be done by the contract. It is the breach of the duty imposed by law and not of the contract obligation which constitutes the tort." (citation omitted)).

The Court, however, does not need to determine the existence of a duty in this case. This is because, even under the duty to act with reasonable care concerning the loading and surrender of Golub's pistachio order, Sandell's Amended Third-Party Complaint does not establish a plausible claim that Wonderful breached this duty.

*1. "Northdrige," California*

As described above, the basis for Wonderful's alleged negligence is its provision of the pistachios to the GM EXPRESS truck crew when—according to Sandell—it either failed to properly verify the truckers' identities or should have known that the GM EXPRESS crew might steal the pistachios. Am. TPC ¶¶ 20–26, 32–36. The first factual prong of this allegation is Wonderful's loading the truck even after being supplied with a driver's license listing "Northdrige, CA" as the license holder's municipality. Id. ¶¶ 21–22; Ex. A.

In a typical negligence claim, including one stemming from an originally contractual relationship, Int'l Fid. Ins. Co., 645 N.Y.S.2d at 525, the duty imposed is one of reasonableness, under which the defendant is charged with behaving reasonably in light of the circumstances, e.g., Bethel v. N.Y.C. Transit Auth., 703 N.E.2d 1214, 1215–16 (N.Y. 1998); Fox v. Marshall, 928 N.Y.S.2d 317, 320 (App. Div. 2011); see also Restatement (Third) of Torts: Physical and Emotional Harm § 3 (Am. Law Inst. 2010) ("A person acts negligently if the person does not exercise reasonable care under all the circumstances."); Restatement (Second) of Torts § 283 (Am. Law Inst. 1965) ("[T]he standard of conduct to which [the defendant] must conform to avoid being negligent is that of a reasonable man under like circumstances."). This standard "takes into account the circumstances with which the actor was actually confronted when the accident occurred, including the reasonably perceivable risk and gravity of harm to others and any special relationship of dependency between the victim and the actor." Bethel, 703 N.E.2d at 1216. While the question of breach (and thus of reasonableness) is a factual one that is typically reserved for the finder of fact at trial, the Court must—on a motion to dismiss or for summary judgment—"make a threshold determination as to whether the plaintiff . . . has made out a case

sufficient in law to support a favorable jury verdict." Akins v. Glens Falls City Sch. Dist., 424 N.E.2d 531, 534 (N.Y. 1981).

The misspelled or fictitious city on the driver's license, in this case, cannot be enough to establish liability for negligence by Wonderful. According to Sandell, the listing of "Northdrige" on the criminal's license was "clearly identifiable," which rendered that identification invalid for use by Wonderful in confirming the trucker's identify and caused it to "breach[] its duty to properly load the pistachios by loading the [truck] with the pistachios ordered by Golub after being presented with fake identification of the driver." Am. TPC ¶¶ 21–22, 24–25. Sandell's proposed interpretation of Wonderful's duty would require consignors to know every possible municipality that a carrier's driver could have come from before releasing a shipment; this does not comport with a "reasonable expectation of the care owed" by consignor to consignee, Palka, 634 N.E.2d at 192, especially when the carrier (in this case, Sandell, and GM EXPRESS by extension) was hired by the latter. While a completely unintelligible string of text in the municipality block might have raised a closer issue (such as how closely the consignor was required to check the license), which may have been sufficient for the question to reach a jury, catching the "Northdrige" mistake—and by extension knowing that the license holder was a prospective pistachio thief—goes beyond the standard of reasonableness imposed under New York law.

The Court holds that, as a matter of law, the "Northdrige" error on the driver's license was not alone sufficient to have required Wonderful to deny GM EXPRESS the pistachios. Since this is the only allegation in the Amended Third Party Complaint related to the apparent

authenticity (or lack thereof) of the license, Am. TPC, Sandell's tort claim against Wonderful cannot proceed based on the "Northdrige" issue alone.

### 2. Failure to Examine the Driver

While almost all of Sandell's allegations relate to the "Northdrige" mistake in Mr. Banjari's driver's license, one other allegation going to negligence warrants separate attention. According to Sandell, after Wonderful received the identification from the GM EXPRESS truck's passenger, it "never spoke to the driver of said vehicle and never inquired about the fake identification bearing license number B7890123." Am. TPC ¶ 23. While—for the same reasons discussed above—the failure to confront the truck driver based on the erroneous municipality cannot establish negligence, there are other facts that might show that communicating solely with the truck's passenger (and never the driver) could constitute negligence in ensuring that the proper carrier received the pistachios for delivery.

In this case, however, Sandell failed to include sufficient allegations on this point within its complaint. For example, if the man whose image is shown in the license was not the passenger, but was instead the driver or some other person, Wonderful would never have determined that the person taking custody of the pistachios was actually the person whose driver's license number matches the one sent by Sandell. If true, this *might* raise a question of fact as to whether Wonderful's determination of GM EXPRESS's identity was reasonable under the circumstances. But nothing concerning this issue is found within the four corners of Sandell's complaint, and neither are allegations concerning any other reason why Wonderful should have spoken with the second crew member of the truck instead of relying on the license provided by the passenger (with the number on it matching the one provided by Sandell). Instead, the Court is

left to speculate as to what additional facts might have made Wonderful's conduct unreasonable, but it is the plaintiff's burden to "allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'" Operating Local 649 Annuity Tr. Fund v. Smith Barney Fund Mgmt. LLC, 595 F.3d 86, 91 (2d Cir. 2010) (quoting Twombly, 550 U.S. at 555); accord Arfa v. Mecox Lane Ltd., 504 F. App'x 14, 15 (2d Cir. 2012). For these reasons, Sandell's third-party negligence claims against Wonderful are dismissed.

**B. Breach of Contract**

In addition to its tort claims, Sandell also attempts to allege a breach of contract based on its claim that Wonderful "promised, agreed and contracted, in exchange for compensation from Golub, to ensure the safe pickup and loading of the order of pistachios." Am. TPC ¶ 29; see also id. ¶¶ 30–33 (making similar allegations). This claim, however, is insufficient to survive a motion to dismiss.

The allegations in Sandell's Amended Third Party Complaint are conclusory and fail to identify the specific contract in question, the specific terms that were breached, or any facts tending to show the formation of or other details about the contract in question. See id. ¶¶ 29–33. This is insufficient to state a claim for breach of contract. See Kelly v. Yale Univ., No. 01-CV-1591, 2003 WL 1563424, at *5 (D. Conn. Mar. 26, 2003) ("It is axiomatic that a plaintiff cannot sustain a claim for breach of contract unless she is able to demonstrate the existence of a contract that was allegedly breached. Kelly's allegations in her complaint are purely conclusory and do not even identify the contract term Yale allegedly breached."); see also Ace Arts, LLC v. Sony/ATV Music Pub., LLC, 56 F. Supp. 3d 436, 450 (S.D.N.Y. 2014) ("[M]erely asserting in 'a conclusory manner that an agreement was breached' is not enough to survive a motion to

11

dismiss." (quoting Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc., 837 F. Supp. 2d 162, 189 (S.D.N.Y. 2011))).

"In order to adequately allege the existence of an agreement, 'a plaintiff must "plead the provisions of the contract upon which the claim is based."'" Howell v. Am. Airlines, Inc., No. 05-CV-3628, 2006 WL 3681144, at *3 (E.D.N.Y. Dec. 11, 2006) (quoting Phoenix Four, Inc. v. Strategic Res. Corp., No. 05-CV-4837, 2006 WL 399396, at *10 (S.D.N.Y. Feb. 21, 2006)); accord Mayes v. Local 106, Int'l Union of Operating Eng'rs, 739 F. Supp. 744, 748 (N.D.N.Y. 1990). While this does not require plaintiffs to attach a copy of the contract or quote its provisions verbatim, "the complaint must at least 'set forth the terms of the agreement upon which liability is predicated . . . by express reference.'" Howell, 2006 WL 3681144, at *3 (alteration in original) (quoting Phoenix Four, 2006 WL 399396, at *10). Sandell has failed to do so in its Amended Third Party Complaint.

Even if Sandell had properly identified and alleged the existence of a contract between Wonderful and Golub that was breached, its claims under that agreement would likely still be subject to dismissal unless Sandell was a party to that same contract and Wonderful was liable directly to Sandell. This is because a third-party plaintiff typically cannot assert a breach of contract claim on behalf of the original plaintiff, and any claim for contribution must therefore stem from the third-party plaintiff's and defendant's jointly tortious behavior. See Ames Assocs. v. ABS Partners Real Estate LLC, No. 06-CV-928, 2010 WL 890034, at *3 (S.D.N.Y. Mar. 3, 2010) ("New York does not authorize contribution as a result of a third-party's breach of contract."); Bonacci v. Lone Star Int'l Energy, Inc., No. 98-CV-0634, 1999 WL 76942, at *5 (S.D.N.Y. Feb. 16, 1999) ("[C]ontribution is not available in actions that allege breach of

contract."); Mun. Hous. Auth. of Schenectady v. Crozier Philippi Assocs. P.C., 593 N.Y.S.2d 347, 348 (App. Div. 1993) ("[D]efendant can be held liable only for the economic loss proximately caused by its own acts or omissions and not for any of the economic loss caused by third-party defendant's breach of its contractual obligations to plaintiff. Third-party defendant, therefore, cannot be liable for contribution or implied indemnity . . . ."). Accordingly, Sandell's claim for breach of contract is dismissed.

**C. Fraud**

Similar to its allegations regarding the breach of unidentified "promises and duties," Sandell states without additional elaboration that Wonderful "fraudulently prepared the Bill of Lading with information that [Wonderful] knew or should have known was invalid, inaccurate and/or fraudulent." Am. TPC ¶ 26. This allegation is plainly conclusory and fails to state a claim of fraud. "To make a prima facie case of fraud, the complaint must contain allegations of a representation of material fact, falsity, scienter, reliance and injury." Small v. Lorillard Tobacco Co., 720 N.E.2d 892, 898 (N.Y. 1999); accord Barclay Arms, Inc. v. Barclay Arms Assocs., 540 N.E.2d 707, 709 (N.Y. 1989); ACA Fin. Guar. Corp. v. Goldman, Sachs & Co., 15 N.Y.S.3d 764, 766 (App. Div. 2015); Zanett Lombardier, Ltd. v. Maslow, 815 N.Y.S.2d 547, 548 (App. Div. 2006). While this single-sentence allegation may hint at falsity, Sandell's complaint fails to allege facts that might establish any other element.

Additionally, Rule 9(b) carries enhanced pleading requirements for claims "alleging fraud or mistake."

> Claims that sound in fraud are subject to the heightened pleading standards of Fed. R. Civ. P. 9(b), which requires that averments of fraud be "state[d] with particularity." To satisfy this requirement, a

13

> complaint must "specify the time, place, speaker, and content of the alleged misrepresentations," "explain how the misrepresentations were fraudulent and plead those events which give rise to a strong inference that the defendant[] had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth."

Cohen v. S.A.C. Trading Corp., 711 F.3d 353, 359 (2d Cir. 2013) (alterations in original) (quoting Fed. R. Civ. P. 9(b); Caputo v. Pfizer, Inc., 267 F.3d 181, 191 (2d Cir. 2001)).

It is clear from Sandell's Amended Third Party Complaint that its allegations are insufficient to meet the heightened pleading standard for fraud claims. In fact, the only fraud allegation in the complaint—namely, that Wonderful incorrectly prepared the bill of lading by relying on the identity of the carrier that was confirmed by the documents GM EXPRESS provided and by the information given to it by Sandell—seems to expressly rebut any notion of scienter. Sandell's claim for fraud against Wonderful based on the preparation of the bill of lading is therefore dismissed.

**D. Amendment of the Complaint**

At the outset, the Court rejects Sandell's request for amendment found at the end of its Opposition. Opp'n at 8; Dkt. No. 23-1 ("Proposed Amended Complaint"). This request fails to comply with the Local Rule governing motions for leave to amend pleadings. L.R. 7.1(a)(4). Furthermore, the request is simply tacked onto the end of an opposition brief, and "[i]t is within the court's discretion to deny leave to amend . . . when leave is requested informally in a brief filed in opposition to a motion to dismiss." Corsini v. Nast, 613 F. App'x 1, 4 (2d Cir. 2015) (quoting In re Tamoxifen Citrate Antitrust Litig., 466 F.3d 187, 220 (2d Cir. 2006), overruled on other grounds by FTC v. Actavis, Inc., 133 S. Ct. 2223 (2013)).

Even if the Court were to consider Sandell's request, it would be denied as futile. The only difference in the Proposed Amended Complaint concerns its fraud claims, and these allegations still fail to show all the elements of fraud, and especially not with the particularity required by Rule 9(b). Dkt. No. 23-1 ("Proposed Amended Third Party Complaint") ¶¶ 38–42; see also, e.g., Zanett, 815 N.Y.S.2d at 548 ("To state a claim for fraud, a plaintiff must allege misrepresentation or concealment of a material fact, falsity, scienter by the wrongdoer, justifiable reliance on the deception, and resulting injury.").

Rule 15 does, however, command that "[t]he court should freely give leave [to amend] when justice so requires." Therefore, when a complaint is dismissed for the first time pursuant to Rule 12(b)(6), leave to amend before reviewing the proposed amended pleading should typically be withheld only if amendment would be futile—namely, if it is clear from the facts alleged that the events in question cannot give rise to liability. Ricciuti v. N.Y.C. Transit Auth., 941 F.2d 119, 123 (2d Cir. 1991); see also, e.g., In re Aluminum Warehousing Antitrust Litig., No. 14-3574, 2016 WL 4191132, at *9 (2d Cir. Aug. 9, 2016) (discussing affirmance of dismissal without leave to amend due to futility); Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp., No. 15-3462, 2016 WL 3923849, at *3 (2d. Cir. July 21, 2016) (noting that denial of leave to amend on futility grounds is subject to de novo review); Lorely Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC, 797 F.3d 160, 191 (2d Cir. 2015) (holding that, by not allowing plaintiffs to submit a new pleading attempting to correct any deficiencies, the district court "violated the liberal spirit of Rule 15" (quoting Williams v. Citigroup, Inc., 659 F.3d 208, 214 (2d Cir. 2011))). In this case, the biggest problem with Sandell's complaint is perhaps that it is haphazard and incomplete, beyond the specific legal deficiencies discussed in this opinion. While the

15

sparsity of its factual allegations renders the Amended Third Party Complaint legally insufficient as described above, it is unclear whether this is because the facts themselves support Wonderful's position, or because Sandell's lawyers simply failed to marshal the proper facts into their pleadings. As a consequence, the Court will allow Sandell one additional chance to move to amend its complaint, at which point Wonderful may respond and the Court can assess the proposed amendment's viability and the other factors governing leave to amend.

Sandell should take particular note that this motion to amend must comply with the Local Rules, L.R. 7.1(a)(4), and must fully address the deficiencies identified in this Memorandum-Decision and Order as to any claim it wishes to pursue. Failure to do so will result in denial of the motion and the dismissal of its claims with prejudice. See, e.g., Burrowes v. Combs, 124 F. App'x 70, 71 (2d Cir. 2005) (affirming the district court's dismissal without further leave to amend after a previous amendment was unsuccessful).

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Wonderful's Motion to Dismiss (Dkt. No. 20) is **GRANTED in part and DENIED in part**; and it is further

**ORDERED**, that Sandell's Amended Third Party Complaint (Dkt. No. 8) is **DISMISSED**; and it is further

**ORDERED**, that if Sandell wishes to continue against Wonderful, it must file a motion to amend its complaint, in accordance with the Local Rules, within **thirty (30) days** from the date of this Memorandum-Decision and Order; and it is further

**ORDERED**, that if Sandell does not move to amend its complaint within the time provided, the Clerk of the Court shall enter judgment in favor of Wonderful and terminate it as a defendant, with prejudice, without further order of the Court; and it is further

**ORDERED**, that the Clerk of the Court shall serve copies of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:     September 08, 2016
           Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge